## LEBANON (village) v LOOP

Ohio Appeals, 1st Dist, Warren Co

No 175.   Decided Oct 18, 1935

Maple & Maple, Lebanon, for plaintiff in error.

C. Donald Dilatush, Lebanon, Yeatman, Hunsicker & Leis, Cincinnati, and Jos. F Nieman, Cincinnati, for defendant in error

## OPINION

By MATTHEWS, J.

The record shows that there was no un-precedented wind storm on the day this wall fell. The evidence is very conflicting as to the condition of the wall. Several witnesses testified to the weaving or yielding of the wall under the fluctuations of ordinary winds to such an extent that work near it was abandoned, and that this condition was called to the attention of various village officials. This court would not be justified in disturbing the verdict on the ground that the wall was not a nuisance. Such an insecure wall clearly rendered the use and occupancy of the plaintiff's property materially less desirable. It was a substantial hurt or damage to the plaintiff, not, however, amounting to a trespass. The hurt or damage did not result from lack of care. No matter how much care was exercised in maintaining this insecure wall, it would have still been a menace. It conforms in all respects to the definition of a nuisance.

On the subject of liability then, the only defense that needs be considered is that based on the claim that the defendant's relation to this wall was governmental, out of which no liability could arise.

In reaching a conclusion as to the validity of this defense it seems to us that we must consider that before the fire and while the Lebanon Opera House was used as the edifice in which all the municipal offices were located, the occupancy of the building by them was in their governmental ca-

pacity. The Lebanon Opera House was in the strictest sense the seat of government and, under **Bell v City, 80 Oh St, 1,** at pages 23 and 24, the leasing of a part not needed temporarily must be regarded as merely incidental to the main purpose of transacting the municipal government therein.

Furthermore, no profit was being derived from this property at the time the damage was done.

For almost a month before the wall collapsed, the property had ceased to be the place to which people repaired to transact government business. They went elsewhere for that purpose. Where liability is claimed to result from the use of property, the use to which it is dedicated at the time determines the question. **Sturzinger v City of Sandusky, 28 Oh Ap, 263 (6 Abs 627).** It cannot be said that at the time this damage was done the wall or the real estate was being used for a governmental purpose. Non constat that it ever would be so used again. Certainly the ownership and possession of this real estate did not facilitate the performance of any governmental function. The most that can be said is, that the defendant was the lawful proprietor in possession. In Clark, Admr. v Manchester, 62 N. H., 577, at 579, the court says:

"So long as the defendants maintained and used the reservoir for the public purpose of extinguishing fires within the city, they were exercising a public corporate duty, and for an injury arising from any neglect in the performance of that duty they could not have been liable. But, at the time of the injury complained of, the reservoir had not been used for any public purpose, nor in fact for any purpose for nearly a year. Its use as a reservoir for water had been abandoned, and the defendants were engaged in filling the excavation so as to use the land for some valuable and more profitable purpose. The city was dealing with and using the land as a private owner deals with and manages his own property. Under such circumstances the defendants would be liable for an injury resulting from their want of care, in the same manner and to the same extent that an individual would for his negligent acts in the care and management of his property."

That a municipality may be held liable for the maintenance of a nuisance upon its property seems to find uniform support in the decisions and the expressions of text writers. This state of the literature on the subject is illustrated by the following quotation from the text in 19 R.C.L., 1084-5:

"A municipal corporation as an owner of land owes the same obligations to the owners of neighboring land with respect to the use of its own, except so far as it has specific authority from the legislature to the contrary, as that of any private owner of land, and it is accordingly well settled that if a municipal corporation makes such use of its own land as to constitute a private nuisance at common law it is liable to the owner of land specially injured by such nuisance, without regard to the character of the use which the municipality is making or whether it is engaged in a governmental or private function. The reason underlying this rule, which seems to throw greater protection over real estate than over personal safety, although it has seldom been expressed by the courts, is doubtless not so much the sanctity of private rights in real estate as that the permanent use of real estate owned by a municipal corporation is a matter within the control and observation of the governing body of the corporation, and not merely of the subordinate officials in charge of the particular piece of property, so that a creation of a nuisance may fairly be called the act of the corporation itself, whereas the defective condition of public property by reason of which an individual suffers personal injuries is usually due to the negligence of an individual caretaker, for which the municipality may not be liable."

The only uncertainty, if any, in the law is as to whether this rule applies to property being used at the time in the performance of a governmental function, and as to this it seems to us that the great weight of the authorities favors liability even under such circumstances. This question was under consideration by the Court of Appeals of the District of Columbia in District of Columbia v Totten, 5 Fed. (2d) 374, in a case in which an adjoining property owner sought damages on account of the maintenance of a jail in such a way as to constitute a nuisance. At pages 376 and 377, the court says:

"Where the municipality, in its attempts to perform a governmental function, so performs as to commit a nuisance from which an adjacent landowner is damaged in the enjoyment of his ownership, he may have an action for damages."

\* \* \*

"The following authorities sustain the general principle that a municipality, regardless of the kind of function it may be exercising, is liable in damages to one who has been injured by the commission of a nuisance by the municipality: Brower v Mayor of N. Y., 3 Barb. (N. Y.) 254; City of New Albany v Slider, 21 Ind. App. 392, 52 NE 626; Clayton v City of Henderson, 103 Ky. 228, 44 SW 667, 44 L.R.A. 474; Miles v City of Worcester, 54 Mass. 511, 28 NE 676, 13 L.R.A. 841, 26 Am. St. Rep. 264; 2 Wood on Nuisances, §748; Mayor of Cumberland v Willison, 50 Md. 138, page 160, 33 Am. Rep. 304; Winona v Botzet, 169 F. 321, 94 C.C.A. 563, 23 L.R.A. (N.S.) 204; Cogswell v R. R. Co., 103 N. Y. 10, 8 NE 537, 57 Am. Rep. 701; Baltimore City v Fairfield Imp. Cp., 87 Md. 352, 39 A. 1081, 40 L.R.A. 494, 67 Am. St. Rep. 344; Hines v Rocky Mount, 162 N. C. 409, 78 SE 510, L.R.A. 1915 C. 751, Ann. Cas. 1915 A, 132; 28 Cyc. 1293."

While we have found no Ohio case on all fours, we believe the judicial expressions on the subject by our Supreme Court are correctly summarized in **28 Ohio Jur., at pages 963 and 964,** as follows:

"It is said, that, since a municipal corporation as an owner of land owes the same obligations to the owners of neighboring land with respect to the use of its own, in the absence of any statutory provision to the contrary, as that of any private owner of land, if a municipality makes such use of its own land as to constitute a nuisance it is civilly liable to the owner of land specially injured thereby. A municipal corporation may also be liable, under common-law principles, for injuries resulting from nuisances created or permitted to exist in connection with the exercise of proprietary or ministerial functions."

Counsel for the defendant urges that the test of liability is whether the municipality created or directed or ordered the creation of the conditions constituting the nuisance. Certain cases are cited, which, it is claimed, make this distinction. We do not believe they bear that construction. Metz v Ashville, 64 SE, 881, was a case for wrongfully causing death from typhoid germs emanating from a stream near the decedent's home, into which a municipal sewer emptied. No property right was invaded, and the death was not caused by any condition of any property owned or possessed by the municipality. In Lincolax v Boston, 20 NE 329, recovery on account of personal injuries caused by firing artillery on Boston Common was sought. All Boston had done was to grant a permit to fire the artillery. There was no nuisance on land owned or possessed by it. This is made clear by Judge Holmes, at page 330:

"\* \* \* it is equally apparent that the license which it gave was not given by it as an act of ownership, but as an act of municipal government. \* \* \* These considerations make plainer what is very plain without them, that the ordinance set out in the declaration is not the exercise of an owner's authority over his property, but is a police regulation of the use of a public place by the public, made by the city under its power to make needful and salutary by-laws, without regard to the accidental ownership of the fee."

In Dyer v Danbury, 85 Conn., 128, damages were sought for personal injuries caused by the fall of a limb from a tree. It clearly appears from the report that the city owed no duty in relation to the tree, and that was the ground upon which judgment for the city was affirmed. The court distinguished Jones v New Haven, 34 Conn., saying:

"In that case we held that the declaration stated a good cause of action, upon the ground that it therein appeared that the State had authorized the city as a special privilege to assume control of the "protection and preservation" of the trees, of which the pruning and removal of the dead limbs was a part, and that the city had assumed the exclusive control of the trees, and the duty of protecting them, for the special benefit of its own inhabitants, and that the duty was a private, as distinguished from a governmental, one."

In neither of these Connecticut cases did the municipality actively create the nuisance, but in one case there was a duty resulting from the possession and control of property to correct the condition, and in the other case there was no such duty, but only the duty to govern. At page 131, in the Dyer v Danbury case, the court says:

"If the overhanging limb, by reason of its liability to fall upon the traveled part of the highway, constituted a nuisance, as alleged, it ought to have been removed. If it endangered travel upon the highway it was a public nuisance and the city could and should have caused its removal. But this duty of the city was a public governmental one, for the neglect of which no liability at common law ensued to the city,

and no statute imposes any. Hewison v New Haven, 37 Conn. 475, 483. The complaint, therefore, states no cause of action arising from the city's failure to abate the nuisance."

In Dalton v Wilson, 44 SE, 830, the condition complained of was located on private property. If it was a nuisance, it was that of a private citizen. The defendant's default was in not exerting the power of government to abate the nuisance. This is made plain by the statement of the court that "The fact remains that the nuisance is maintained by private individuals on private property." In the case at bar, the defendant as the owner of this real estate could have abated the nuisance without exerting the powers to govern at all.

Counsel also quotes from the annotation to Hoffman v City of Bristol, (113 Conn. 386, 155 Atl. 499) 75 A.L.R., 1191. In that case the municipality had created the condition, and, perhaps a reading of some passages in the opinion without taking that into consideration would lead one to the conclusion that liability only existed in cases of creation and not for maintaining a nuisance, but the annotator draws no such inference. At page 1199, it is said:

"A majority of the courts which have passed upon the question have held that the immunity of municipal corporations from liability for acts done in the performance of governmental functions does not extend to cases of personal injuries or death resulting from a nuisance created or maintained by a municipality, and that a municipality is liable for such injuries, although the nuisance was created or maintained in the course of the discharge of public duties or governmental functions."

Finally, counsel urges that Hutchinson v Lakewood, 125 Oh St, 100, is an authority for his position of non-liability. We think the case supports the view of liability of the village. It is true that case held that a municipality is not liable for acts done while engaged in the work of building a sewer. Such work is clearly governmental. No question of the breach of any duty resulting from the ownership of real property was involved. That the court had this distinction in mind is shown by the language at page 107:

"It is also held that a city is liable even in the performance of a governmental function for the creation or maintenance of a nuisance, and this was the basis of the holding in the City of Salem v Harding, supra."

In the City of Salem v Harding, 121 Oh St, 412, referred to by the court in this quotation, the court held as stated in the syllabus that:

"The construction of sewers by a city is the exercise of a governmental function, and a board of health in the discharge of its duties acts in the exercise of the police power of the state, but in the maintenance or destruction of a sewer or any part thereof the city is nevertheless liable for the negligence of its board of health whereby a nuisance is created."

Our conclusion, therefore, is that there was abundant evidence that at the time that this wall collapsed the defendant was holding it as an owner of land in a proprietary or ministerial capacity, owing a duty as such owner, and not in a governmental capacity, and that it was the failure to perform the duty resulting from ownership that caused the damage; and, further, the condition constituting a nuisance, liability attached no matter whether it was being used at the time for governmental purposes. We find no error, prejudicial to plaintiff in error, in the charge of the court upon this subject.

Error is assigned to allowing the plaintiff to testify to the value and the cost of the stock, equipment, and fixtures. No error was committed in so allowing him to testify. Insurance Co. v Burke, 19 C.C. (n.s.) 289.

We have examined the other claims of error, but do not find them substantial, excepting the claim that the verdict is excessive. On this claim, we have reached the conclusion that the jury failed to give due consideration to the element of depreciation from use, and, for that reason, the judgment should be modified by reducing the amount two hundred and fifty ($250.00) dollars.

As so modified, the judgment is affirmed.

ROSS, PJ, and HAMILTON, J, concur.