## CUYAHOGA FALLS (city) v SELDEN

Ohio Appeals, 9th Dist, Summit Co

No 2619. Decided Feb 21, 1936

Arthur Sidnell, City Solicitor, Cuyahoga Falls, and Weick, Powers & Mason, Akron, for plaintiff in error.

Hutchison & Firestone, Akron, for defendant in error.

### OPINION

By WASHBURN, J.

Defendant in the trial court, the City of Cuyahoga Falls, dammed up a small ravine in its public park and created an oval-shaped pond about 300 feet long and 125 feet wide, in which it maintained a practically constant level of water by supplying the same from the city water works, there being a spillway over which water ran when the pond was filled to its capacity, and at the time of the happening of the events which will be hereinafter referred to, there was a small quantity of water running over said spillway.

Said pond was created for the purpose of providing a free bathing place for the inhabitants of said city; and for the purpose of facilitating its use for that purpose, the city erected, on a float in the northerly central part of said pool, near where the dam was, and where the water was the deepest, which was somewhat over 5 feet, a large diving board, and also erected, at the same time, upon a small platform connecting with the bank, on the west side of said pond, a small diving board,

about one-half as large as said other diving board, where the water in front of said small diving board was about 3 feet deep; said smaller board being placed closer to the water than said larger board.

The difference in size and location of said boards, taken in connection with all of the surrounding circumstances, justifies the inference that said smaller board was designed for use primarily for young people, whose use of the same would be safer in water of more shallow depth.

Because of the difference in the lengths and locations of said spring boards, the first diving place will be referred to as the larger one, and the other as the smaller one, and the happening involved in this inquiry took place at the smaller diving board.

There is no claim that there was any defect whatsoever in said diving boards, the sole and only claims being that the water was not deep enough at the smaller diving board to make the use of said board for diving purposes reasonably safe, and that plaintiff was not notified of that condition. There is a decided conflict in the evidence as to whether there was a sign on a pole in the vicinity of the smaller diving board which gave warning as to the depth of the water at said place.

Said diving boards had been maintained at said place and had been used by the public for a period of several months before the happening of the accident to plaintiff herein, during which time there had been no accident in the use of said diving boards for diving purposes due to the fact that the water was no deeper than it was.

Plaintiff, John W. Selden, who was a young man 29 years of age, and an expert swimmer and diver, went to said pond for the purpose of making use of the facilities thus provided by the city. His said visit was in the daytime, and was his first visit to the place for the purpose of swimming.

He entered at the east side of the pond, opposite the smaller diving board, and waded to a point in front of the larger diving board, and thereby became familiar with the depth of the water at that diving board. He swam from there to a point at the side of and about 25 feet from the smaller diving board, where his hands touched the bottom, and from there he waded to the shore and walked towards said smaller diving board, approaching said diving board from the direction in which said sign, if there was one upon said pole, faced, and without taking any means to ascertain the depth of the water at the end of said smaller diving board, he took a position upon the end of the diving board; however, the testimony is that at that time there were at least two bathers of about his size standing in the water in front of said diving board, so that if he saw and observed them, he would have been able to note the probable depth of the water.

Plaintiff then proceeded to dive into the water; but he did not attempt an ordinary dive, entering the water in a slanting position, but undertook a fancy dive—that is, one known as a "jack-knife" dive; in which, from as high a position as he could attain from the spring board, he dived straight down close to and either in front of or at one side of said diving board, and struck his head upon the bottom and was seriously injured.

He brought suit against the city to recover damages for such injuries, and recovered a judgment on a verdict in his favor in the sum of $20,000.

In his first cause of action in his petition, plaintiff alleged the construction and maintenance by the city of said smaller diving board, and that he was not warned by signs or otherwise as to the depth of the water in front of said diving board, and that said diving board so erected in said place and under the circumstances there existing, constituted a nuisance, created and maintained by said city; and in his second cause of action, he alleged that the city "negligently erected and maintained" said diving board where the water was "of a depth of approximately 3 feet," that there were no signs of any kind in the vicinity of the board to indicate to plaintiff or other users the depth of the water, or to warn plaintiff or other users of the shallow water at said place, that no warning of any kind, by sign or otherwise, was given him as to said shallow state of the water at that point, that this was the first time the plaintiff had ever visited said swimming pool for the purpose of swimming, and that without any fault on his part he was injured when he dived into said water. In said second cause of action he set forth four specifications of negligence on the part of said city, as follows:

"1. In erecting or causing to be erected a spring diving board at a point where the water of the pool was only approximately three feet in depth.

"2. In maintaining said spring diving board at a place where the water of the

pool was only approximately three feet in depth.

"3. In failing and neglecting to post signs in the vicinity of said spring diving board to indicate to this plaintiff and the users of said diving board the shallow state of the water at the point where the plaintiff dived from said board.

"4. In failing and neglecting to warn this plaintiff by any means whatsoever of the shallow state of the water at the point where the plaintiff dived from said board."

He then pleaded that "as a direct and proximate result of the nuisance created and maintained by the defendant as set forth in plaintiff's first cause of action, and of the negligence of the defendant as set forth in the plaintiff's second cause of action," he was seriously injured and damaged.

In the amended answer of the city, which appears in the files and which the record shows was regarded as filed, although it is not so stamped, it admitted its corporate capacity, and that by virtue of authority given it under the laws of the state it installed and maintained said bathing pool, and denied the other allegations of the petition; and it alleged that if the defendant was negligent, then and in that event plaintiff, by his own negligence, directly and proximately contributed to his injuries, because of the existence of the following facts and circumstances:

"1. That a warning sign was posted and in place at the diving board informing all persons that the water was shallow.

"2. That the plaintiff knew or in the exercise of ordinary care should have known the depth of the water in the vicinity of the diving board.

"3. That the diving board was only about 2 feet above the water, which would indicate to the defendant in the exercise of ordinary care that the water was shallow.

"4. That said diving board was located at a point separate and apart from the large diving board upon the float provided for adults.

"5. That disregarding all of the conditions and circumstances surrounding the diving board, plaintiff nevertheless used the same.

"6. That the use by the plaintiff of said diving board was contrary to the use and purpose for which the same was ordinarily intended."

The evidence discloses that the city built and maintained said diving platforms and diving boards.

At the close of all of the evidence, counsel for the city made the following motion: "At this time I want to renew my motion heard at the end of plaintiff's case for a directed verdict, on the ground, first, that it is a governmental function, that the plaintiff has failed by a preponderance of the evidence to prove all of the allegations of his case to bring it within the exception * * *"", and at the time said motion was made, it was made plain to the court, in the colloquy between court and counsel, that the city claimed that it was not liable for any negligent acts in the performance of a governmental function, unless it was made liable by virue of the provisions of §3714, GC.

The same information had been revealed to the court and counsel for plaintiff in connection with a motion made before any evidence was introduced, which sought to require the plaintiff to elect whether he would go to the jury on a claim of nuisance or a claim of negligence, and by a similar motion made at the end of plaintiff's testimony.

Exceptions were duly noted to the overruling of all of said motions of the city.

At the request of the plaintiff, the court charged the jury before argument as follows:

"II. I charge you that if you find from all the evidence in this case that the diving board and the water in the vicinity thereof were not reasonably safe for diving, and that the City of Cuyahoga Falls failed to give the plaintiff, John Selden, notice of this unsafe condition, then the City of Cuyahoga Falls is guilty of negligence."

To the giving of which charge, the city duly excepted.

In the general charge the court referred to said specifications of negligence and said to the jury: "Those are specific acts of negligence claimed by the plaintiff, for which he claims a right to recover in this case," and that under the issues in the case there was presented for the determination of the jury the question, "was the defendant negligent in one or all of the particulars complained of?" and that if they found that it was so negligent and that the plaintiff was not guilty of contributory negligence, "then the plaintiff would be entitled to your verdict."

The case was submitted to the jury on

the theory that if the city was negligent under the principles of the common law, it would be liable, in the absence of contributory negligence; and nowhere in the special requests which were given nor in the general charge was there any definition of a nuisance, nor any instruction whatsoever with reference thereto, and the defendant also excepted to the court's general charge.

It is the claim of the city in this proceedings in error that inasmuch as the city, in erecting and maintaining said swimming pool, which it had full authority under the laws of the state of Ohio to do, was acting in its governmental capacity, and inasmuch as under the common law it would not be liable for its negligence while acting in that capacity, it was liable in this case, if at all, solely because of the provisions of §3714, GC, and that under said section negligence under the principles of the common law is not sufficient to create liability; that in order to create liability under said section the circumstances must be such as to justify the conclusion that the city's acts constitute the creation or maintenance of a nuisance, and that, as this case was not submitted to the jury upon that issue, which was clearly made by the pleadings, there was error which requires a reversal of the judgment.

It is important that we keep in mind that this is not a case involving a question of negligence in the keeping of a public place open or in repair, and it is not a case involving the acts of a city which are performed in its proprietary capacity; that on the contrary this case presents solely and only a question relative to the liability c a city while acting in its governmental capacity.

The recent Supreme Court decisions of this state plainly indicate the establishment of the principle that §3714, GC, must be strictly construed. and that whatever may be its effect when applied to the city's proprietary acts, or even to its governmental acts in failing to keep its public streets and grounds open and in repair, said section (except as now provided in §3714-1, GC) does not create a liability for other governmental activities of a city unless they result in the creation or maintenance of a condition which a jury is warranted in finding constitutes a nuisance.

City of Mingo Junction v Sheline, Admrx., 130 Oh St 34.

City of Hamilton v Dilley, 120 Oh St 127.

Belle v City of Cleveland, 106 Oh St 94.

City of Wooster v Arbenz, 116 Oh St 281.

While not applicable to this case, because of the recentness of its enactment, the legislature, in enacting §3714-1, GC, recognized the law to be as stated in the foregoing proposition, and modified and changed the same in some particulars not pertinent to the case at bar.

Language used in Supreme Court opinions with reference to the duty created by §3714, GC, at a time before questions with reference to the dividing line between governmental and proprietary functions were the subject of discussion and when they were not under consideration in the courts of this state, are of but little assistance in arriving at a conclusion of what we regard as the controlling question in this case.

We are of the opinion in this case that the liability of the defendant depended upon the question of whether or not the acts of the defendant, while in the performance of a governmental function, were such as to justify a jury in finding that the city created or maintained a nuisance.

While negligence may frequently constitute an element of nuisance, usually there are other elements which must be taken into consideration in determining whether a nuisance exists, such as locality, surroundings, methods, degree of danger, and the custom of the community. If a negligent act in its inherent nature is so hazardous as to make the danger extreme and to make serious injury so probable as to be almost a certainty, it may constitute a nuisance as a matter of law; but usually it is the province of the jury to determine whether the circumstances of a particular case are such as to warrant the conclusion that a condition exists which constitutes a nuisance.

"1. The duty imposed upon municipalities in Ohio by §3714, GC, to keep its streets free from nuisance, is an exception to the rule of common law that no liability attaches to a municipality for negligence in the discharge of a governmental function.

"2. It is the province of the court to define a nuisance and the province of the jury to determine whether the circumstances of the particular case come within the definition of a nuisance."

City of Hamilton v Dilley, supra.

Clearly this is such a case.

It is claimed, however, in this case, that while the court did not specifically refer

to any such question, it did, in the special charge given before argument at the request of the plaintiff, cover the elements of a nuisance.

In that request the court told the jury that if they found "that the diving board and the water in the vicinity thereof were not reasonably safe for diving," and no notice of such unsafe condition was given, then the city was negligent, and in the general charge the jurors were permitted to base a recovery on such negligence.

We do not agree with the contention of the plaintiff with reference to said charge. A finding that, simply and solely because of the shallowness of the water, said diving board was not reasonably safe for diving, is not sufficient to warrant the conclusion that a nuisance existed as a matter of law. The kind of diving is not stipulated, and plaintiff's diving in this case was not an ordinary or common kind of diving, and the evidence in this case indicates that the ordinary kind of diving over a period of several months had not resulted in any injury. Such charge omitted entirely the degree of danger and the probability of injury, which were important in determining whether or not the construction and maintenance of said diving board constituted a nuisance.

In view of the restriction of the liability of the defendant under the law, this was peculiarly a case which required the court to define and explain the elements of a nuisance, and squarely submit that question to the jury, and to so charge the jury as to restrict the liability of the defendant to a liability for the creation or maintenance of a nuisance; and there was nothing said to the jury upon that subject. On the contrary, the jury might well have understood from the instruction given it that the city had no right to build or maintain a spring board in a place suitable for its ordinary use, and that it was liable if it failed to notify plaintiff that the water was not deep enough for fancy and spectacular diving. The very closeness of the spring board to the water, and the maintenance of the larger spring board in another place, were indications, at least to an expert swimmer such as the plaintiff was, that said smaller board was not intended for any such use; and the fact that a larger spring board was maintained at another place, and all of the other matters, as herein-

before mentioned, were worthy of consideration by a jury called upon to determine whether or not the condition there existing, under all the circumstances, justified the conclusion that a nuisance existed.

For error of the court in failing to instruct upon and submit to the jury the issue as to whether or not the city failed to keep its public grounds free from nuisance, and for error of the court in charging that the city was liable for mere negligence not involving the question of nuisance, the judgment is reversed.

The charge of the court on the burden of proof is not approved.

Judgment reversed and cause remanded.

FUNK, PJ, and STEVENS, J, concur in judgment.