Guernsey, J.
Plaintiff’s action being founded solely on common-law negligence, we are not concerned with any liability of defendant on the theory of nuisance. Moreover, as no issue was raised in the Common Pleas Court, in the Court of Appeals or in this court as to the sufficiency of plaintiff’s allegations of negligence, the only issue to be determined is whether the petition fails to state a cause of action by alleging a function of the defendant municipality in the exercise of which it was immune from liability for its common-law negligence.
In the absence of adoption by the General Assembly of legislation abolishing the rule, this court remains committed to, and is not yet ready to abandon, the rule that, except as otherwise provided by statute, municipal corporations are exempt from liability for negligence in the performance or nonperformance of their governmental functions as distinguished from those which are proprietary. See Broughton v. City of Cleveland, 167 Ohio St., 29, 31.
It is apparent that, in rendering their respective judgments herein, both the Common Pleas Court and the Court of Appeals relied entirely on the authority of Seldon v. City of Cuyahoga Falls, 132 Ohio St., 223, wherein the following appears in the syllabus:
“1. In the construction and maintenance of a park and swimming pool for the use and benefit of the general public, *385 a municipality acts in a governmental rather than a proprietary capacity.
“2. While acting in such governmental capacity a municipality incurs no liability in tort for common-law negligence.”
However, Chief Justice Weygandt stated in his opinion, at page 224:
“To simplify and shorten this discussion, it should be noted that the defendant municipality here acted in a governmental rather than a proprietary capacity in the construction and maintenance of its park with a sioimming pool for the use and benefit of the general public. City of Mingo Junction v. Sheline, Admx., 130 Ohio St., 34, 196 N. E., 897, 57 A. L. R., 402. This seems to be conceded by the plaintiff.” (Emphasis added.)
Indeed, in the same case, the Court of Appeals for Summit County had not deemed there was any issue of governmental or proprietary capacity to be considered or determined by it, for it said (Cuyahoga Falls v. Selden, 23 Ohio Law Abs., 181, 184):
“It is important that we keep in mind that this is not a case involving a question of negligence in the keeping of a public place open or in repair, and it is not a case involving the acts of a city which are performed in its proprietary capacity; that on the contrary this case presents solely and only a question relative to the liability of a city while acting in its governmental capacity.” (Emphasis added.)
It was held by this court in Williamson Heater Co. v. Radich, 128 Ohio St., 124, as stated by Chief Justice Weygandt in his opinion, at page 126:
“It is of course true that the syllabus of a decision of the Supreme Court of Ohio states the law of Ohio. However, that pronouncement must be interpreted with reference to the facts upon which it is predicated and the questions presented to and considered by the court. It cannot be construed as being any broader than those facts warrant. When obiter creeps into a syllabus it must be so recognized and so considered.” (Emphasis added.)
It appearing that, in the Selden case, the plaintiff had conceded that the municipality was exercising a governmental function, and that the issue of governmental versus proprietary functions was not presented to and considered by the Supreme *386 Court, we are of the opinion that all that part of the first and second paragraphs of the syllabus of the Selden case, purporting to hold that in the construction and maintenance of a swimming pool for the use and benefit of the general public a municipality acts in a governmental rather than a proprietary capacity and incurs no liability in tort for common-law negligence, is obiter and thus established no judicial precedent.
In the recent case of Gibbon, Admr., v. Young Women’s Christian Assn, of Hamilton, Ohio, 170 Ohio St., 280, which was an action for wrongful death by drowning allegedly caused by the negligence of defendant’s employee, this court followed the earlier case of Waddell, a Minor, v. Young Women’s Christian Assn., 133 Ohio St., 601, involving similar facts, and held that, except in certain limited situations, a charitable or eleemosynary institution, other than one which has as its purpose the maintenance and operation of a hospital, is, as a matter of public policy, not liable for tortious injury. Although thus recognizing in the Gibbon case the application of public policy to the determination of liability of a charitable or eleemosynary institution under rules previously established in Avellone v. St. John’s Hospital, 165 Ohio St., 467, this court nevertheless found in the Gibbon case that considerations of public policy also required that the established doctrine of immunity from liability should continue to be applied to the factual situation presented therein.
Although cases pertaining to tort liability of charitable or eleemosynary institutions may thus present interesting parallels to the tort liability of municipal corporations, the immunity of each is based on different legal concepts, and we do not deem the decisions as to the former controlling with respect to decisions pertaining to the latter. The present concept of immunity of charitable and eleemosynary institutions from tort liability is as expressed by Acting Chief Justice Matthias in his opinion, at page 473, in the Avellone case:
“Although it is apparent that this court has used language indicative of each of the four named theories of immunity, it is also apparent that, in the final analysis, the partial immunity of nonprofit hospitals obtaining in Ohio at the present time, they being [before the Avellone decision] immune from liability only *387 as to patients, i. e., ‘beneficiaries of tbe charity’ who cannot prove negligent selection of servants, is based solely upon tbe general ground of public policy.”
On tbe other band, tbe immunity of municipal corporations from liability for their torts has not, by Ohio decisions, been attributed to considerations of public policy but is founded instead on tbe supremacy of tbe sovereign. As stated by Chief Justice Marshall in City of Wooster v. Arbenz, 116 Ohio St., 281, 283:
“This court is for tbe present committed to tbe doctrine that there is no liability on the part of a municipality in actions for tort, if tbe function exercised by tbe municipality at tbe time of tbe injury to tbe plaintiff was a governmental function. Tbe nonliability for governmental functions is placed upon tbe ground that tbe state is sovereign, that tbe sovereign cannot be sued without its consent, and that tbe municipality is tbe mere agent of tbe state and therefore cannot be sued unless tbe state gives its consent by legislation. * * *
“Tbe court is equally committed to tbe doctrine that if tbe function being exercised is proprietary and in pursuit of private and corporate duties, for tbe particular benefit of tbe corporation and its inhabitants, as distinguished from those things in which tbe whole state has an interest, tbe city is liable. ”
We are not, therefore, now concerned with considerations of public policy but, on tbe contrary, are concerned with judicial interpretation of established rules of law. We are required by tbe doctrine of stare decisis to follow those rules of law providing for tbe immunity from liability of a municipality while in tbe exercise of a governmental function and for tbe nonimmunity thereof while in tbe exercise of a proprietary function, but, as there is no controlling judicial precedent in Ohio establishing which of these functions is exercised by a municipality in its ownership and operation of a public swimming pool, such determination is left to our judicial interpretation without tbe limitations of stare decisis.
We are not assisted in this determination by tbe decisions of other jurisdictions, which, if not unalterably opposed in their conclusions, are distinguishable from each other on many and diverse grounds. On tbe one extreme, are tbe decisions bolding *388 the operation of a swimming pool to be a governmental function notwithstanding that the pool is operated at an actual profit. On the other extreme, are the decisions holding the operation to be a proprietary function notwithstanding that the pool is operated without charge. Other variations depend on the operation being in conjunction with or independent of other recreational or health facilities and upon whether the swimming facility is a natural pond, an ocean beach or an artificial structure. See annotation, 55 A. L. R. (2d), 1434. In 18 Mc-Quillin on Municipal Corporations (3 Ed.), 457, Section 53.113, the author concludes that, “in view of the tendency of late decisions and the development of the law on this subject, the rule will ultimately prevail that in maintaining parks, playgrounds, bathing pools and beaches, and like recreations, the city is performing a local function for its people and it should be held liable on the same basis as a private person or corporation.”
At this point, it would be well to observe also that, although we have already distinguished the Selden case, supra, with respect to the issues of law presented to and considered by the court, it is likewise distinguishable from this case on its facts. Reference to the opinion of the Court of Appeals (23 Ohio Law Abs., 181) shows that the city had “dammed up a small ravine in its public park” and “said pond was created for the purpose of providing a free bathing place.”
Ohio is not, however, without precedent as to the tests to be applied to determine, in any situation, whether a municipal function is governmental or proprietary. For this purpose, this court has often resorted to those tests set forth, as follows, by Chief Justice Marshall in City of Wooster v. Arbens, supra, at page 284:
“In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that *389 immunity from liability which is enjoyed by the state itself. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary.
“Another familiar test is whether the act is for the common good of all of the people of the state, or whether it relates to special corporate benefit or profit. In the former class may be mentioned the police, fire, and health departments, and in the latter class utilities to supply water, light, and public markets. ’ ’
In applying these tests we are also here governed by the fact that this appeal is from a judgment dismissing the action following the sustaining of a demurrer. We, therefore, must liberally construe the petition favorably to the plaintiff, and, for the purpose of testing its legal sufficiency, must indulge in every reasonable inference from the facts alleged therein to sustain same. Humphries v. Wheeling Steel Corp., 132 Ohio St., 263; Gugle v. Loeser, 143 Ohio St., 362; and Glass v. McCullough Transfer Co., 159 Ohio St., 505.
Examination of the general laws of Ohio reveals that the Legislature has not imposed upon municipal corporations any mandatory duty to operate public swimming pools, but substantial legislative authority has existed for many years permitting them to do so. Section 717.01 and Section 755.12 et seq., Be-vised Code.
Nor can we say that the operation of a swimming pool is, as stated in Wooster v. Arbenz, supra, in the performance of “those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property.” Some claim might be made that swimming pools have a relationship to health, but such relationship, if any, is incidental and not universal. They do not preserve health in the sense of abating conditions which en *390 danger health or in providing cures for illness and disease. In fact, in the operation of all swimming pools there is a constant battle to keep them sanitary so that they will not, in themselves, become a source of contagion and disease. Municipal swimming pools do, however, have a direct relationship to the “comfort and convenience of its citizens.”
The allegations of the petition are sufficiently narrow as to require us to consider the operation of this swimming pool as being independent of other municipal functions and will not permit us to conclude that the pool was operated in connection with or as a mere incident to the exercise of some municipal function recognized as governmental in nature. The allegation, “known as Centennial Park Pool,” is merely a matter of appellation and identification and bears neither on the nature of the operation nor upon its location.
We do not consider the charge of an admission fee as being necessary to proprietary function, for, under the foregoing tests, if a city should benefit by the growth and prosperity of itself and its inhabitants, no direct financial benefit is necessary. However, we do consider such admission fee as pertinent in determining whether the pool is operated by the municipality for the common good of all the people of the state or “primarily for the benefit and accommodation, of those of its citizens who might be interested.”
In Ever sole v. City of Columbus, 169 Ohio St., 205, in the third paragraph of the syllabus, this court held:
“A municipality in voluntarily establishing and maintaining an arts and crafts center as a part of its recreation program and primarily for the benefit and accommodation of those of its citizens who might be interested is engaged in a proprietary venture and is answerable for its negligence.” (Emphasis added.)
By its inherent nature and by limitations of size and location, a municipal swimming pool is ordinarily accessible to and used by only such of those persons living in, or in the immediate vicinity of, the municipality and who are interested in swimming. An admission fee further excludes from the beneficiaries of such activity all those members of the public who either do not possess, or who are unwilling to pay, the money for such admission fee.
*391 We conclude that, indulging favorably to the plaintiff every reasonable inference from the facts alleged, it appears from the petition that defendant city voluntarily owned and operated a swimming pool primarily for the benefit and accommodation of those of its citizens who might be interested, and that such ownership and operation constituted the exercise of a proprietary function for which the city is answerable for its negligence.
It follows that, with reference to the allegation of this function, the demurrer should have been overruled. The judgment of the Court of Appeals is, therefore, reversed, and the cause is remanded to the Court of Common Pleas for further proceedings.

Judgment reversed.

Taft, C. J., Zimmerman and Herbert, JJ., concur.
Matthias, 0 ’Neill and Gibson, J J., concur in the judgment.
Guernsey, J., of the Third Appellate District, sitting by designation in the place and stead of Griffith, J.

 There is a tremendous body of literature protesting governmental immunity for tortious conduct and advocating the protection of its victims. See, e. g., Harno, Tort Immunity of Municipal Corporations (1921), 4 Illinois Law Quarterly, 28; Borchard, Government Liability in Tort (1924), 34 Yale Law Journal, 1, 129, 229; Governmental Responsibility in Tort (1926), 36 Yale Law Journal, 1, 757, 1039; Governmental Responsibility in Tort (1928), 28 Columbia Law Review, 577; Theories of Governmental Responsibility as a Factor in the Decision of Certain Types of Tort Cases (1928), 28 Columbia Law Review, 734; Feezer, Capacity to Bear Loss, etc. (Municipal Corporations) (1930), 78 Pennsylvania Law Review, 805, 815; Tooke, The Extension of Municipal Liability in Tort (1932), 19 Virginia Law Review, 97; David, Municipal Liability in Tort in Calif orna (1933), 7 Southern Calfornia Law Review, 48, 214, 295, 372; State and Municipal Liability in Tort (1934), 20 American Bar Association Journal, 747; Seasongood, Municipal Corporations: Objections to the Governmental or Proprietary Test (1936), 22 Virginia Law Review, 910; Barnett, The Foundations of the Distinctions Between Public and Private Functions in Respect to the Common-Law Tort Liability of Municipal Corporations (1937), 16 Oregon Law Review, 250; Fuller and Casner, Municipal Tort Liability in Operation (1941), 54 Harvard Law Review, 437; Peterson, Governmental Responsibility for Torts in Minnesota (1942), 26 Minnesota Law Review, 293; Warp, The Law and Administration of Municipal Tort Liability (1942), 28 Virginia Law Review, 360; Repko, American Legal Commentary on the Doctrines of Municipal Tort Liability (1942), 9 Law and Contemporary Problems, 214; Green, Municipal Liability for Torts (1944), 38 Illinois Law Review, 355; Smith, Municipal Tort Liability *400 (1949), 98 Michigan Law Review, 41; Antieau, The Tort Liability of American Municipalities (1952), 40 Kentucky Law Journal, 131; Price and Smith, Municipal Tort Liability: A Continuing Enigma (1953), 6 University of Florida Law Review, 330; Bailey, The Basis of Tort Liability of Municipal Corporations in the State of Oklahoma (1954), 7 Oklahoma Law Review, 1; Tort Liability of Municipal Corporations in Pennsylvania (1956), 17 University of Pittsburgh Law Review, 674; David, Tort Liability of Local Government: Alternatives to Immunity from Liability or Suit (1959), 6 University of California at Los Angeles Law Review, 1; Harper, Law of Torts (1933), 658, Section 295; Prosser, Law of Torts (2d), (1955), 774; 2 Harper and James, The Law of Torts (1956), 1610 and 1619, Sections 29.3 and 29.6.

 The following list of reported Ohio eases, which is fairly complete, clearly demonstrates the morass of inconsistencies and changes of mind which have occurred as the result of attempts to apply the “simple rule” for determining when a municipal corporation will be liable under the doctrine of respondeat superior or immune from liability for negligence.
Governmental
Construction of sewer
City of Salem, v. Harding (1929), 121 Ohio St., 412
Hutchinson v. City of Lakewood (1932), 125 Ohio St., 100
Creation and maintenance of police department
Aldrich v. City of Youngstown (1922), 106 Ohio St., 342
Fire department
Fredrick, Admx., v. City of Columbus (1898), 58 Ohio St., 538
Wheeler v. City of Cincinnati (1896), 19 Ohio St., 19
Operation of hospital
Lloyd V. City of Toledo (1931), 42 Ohio App., 36
Collecting garbage
Broughton v. City of Cleveland (1957), 167 Ohio St., 29
*401 Maintenance of sanitary land fill for disposal of garbage and refuse
Osborn v. City of Akron (1960), 171 Ohio St., 361
Construction of sewage plant
Ratliff v. Akron (1959), 82 Ohio Law Abs., 353
Collecting rubbish
Gorman v. City of Cleveland (1927), 26 Ohio App., 109
Bademan v. Cleveland (1952), 66 Ohio Law Abs., 175
Construction and maintenance of park and swimming pool
Selden v. City of Cuyahoga Falls (1937), 132 Ohio St., 223
Maintenance of public park in natural state
City of Cleveland v. Walker, Admx. (1936), 52 Ohio App., 477
Maintenance and control of combined park and zoo
Crusafi v. City of Cleveland (1959), 169 Ohio St., 137
Municipal building
Tinsley v. Cincinnati (1957), 78 Ohio Law Abs., 419
Construction and maintenance of park
Snider v. Youngstown (1938), 27 Ohio Law Abs., 231
*402 Improvement and maintenance of streets
Standard Fire Ins. Co. v. City of Fremont (1955), 164 Ohio St., 344 Davis v. Charles Shutrump & Sons Co. (1942), 140 Ohio St., 89
City of Dayton v. Glaser (1907), 76 Ohio St., 471
Village of Blue Ash v. City of Cincinnati, 173 Ohio St., 345
Barricading street for coasting
City of Mingo Junction v. Sheline, Admx. (1935), 130 Ohio St., 34
Street cleaning
City of Akron v. Butler (1923), 108 Ohio St., 122
Galluppi v. City of Youngstown (1936), 55 Ohio App., 331
Traffic lights
Martin v. City of Canton (1931), 41 Ohio App., 420
Issuing and revoking building permits
James v. City of Toledo (1927), 24 Ohio App., 268
Jail or workhouse
Wittenbrook, Admx., v. Columbus, 33 Ohio Law Abs., 586
Bell v. City of Cincinnati (1909), 80 Ohio St., 1
*400 Proprietary
Operation and upkeep of sewer
City of Portsmouth v. Mitchell Mfg. Co. (1925), 113 Ohio St., 250
Airport
Village of Blue Ash v. City of Cincinnati (1960), 173 Ohio St., 345
Fire department
Fowler v. Cleveland (1919), 100 Ohio St., 158
Operation of hospital
Hyde v. City of Lakewood (1961), 17 Ohio Op. (2d), 61
Collecting garbage
City of Cleveland v. Russo, Admr. (1918), 98 Ohio St., 465
*401 Operation of transportation system
Zangerle, Aud., v. City of Cleveland (1945), 145 Ohio St., 347 Cleveland Ry. Co. v. Village of North Olmstead (1935), 130 Ohio St., 144
Construction and maintenance of water system
City of Barberton v. Miksch (1934), 128 Ohio St., 169
Cemetery
City of Toledo v. Cone (1884), 41 Ohio St., 149
Maintenance of arts and crafts building as part of recreation program
Eversole v. City of Columbus (1959), 169 Ohio St., 205
Municipal auditorium
State, ex rel. White, v. City of Cleveland (1932), 125 Ohio St., 230
Municipal stadium
Chúpele, Admr., v. City of Akron (1951), 89 Ohio App., 266
Renting of memorial building
Dean v. Board of Trustees of Soldiers & Sailors Memorial Bldg. (1940), 65 Ohio App., 362
*402 Construction of off-street parking facility
Zaras v. City of Findlay (1960), 112 Ohio App., 367
Operation of off-street parking facility
Cutnaw v. City of Columbus (1958), 107 Ohio App., 413
Municipal golf course
Gorsuch v. Springfield (1945), 43 Ohio Law Abs., 83
Wall of municipal building left standing after fire
Lebanon v. Loop (1935), 20 Ohio Law Abs., 302
Supplying of electricity
Butler v. Karb, Mayor (1917), 96 Ohio St., 472
Travelers Ins. Co. v. Village of Wadsworth (1924), 109 Ohio St., 440

 In McDowell v. State Highway Commissioner (1961), 365 Mich., 268, 112 N. W. (2d), 491, the Supreme Court of Michigan refused to extend the doctrine of the Williams case beyond a municipal corporation and to the state.