Case 99.—ACTION BY J. L. MANNING AGAINST JAMES F. GRINSTEAD AND OTHERS FOR DAMAGES ON BOND OF INDEMNITY.—January 23.

## Manning v. Grinstead, &c.

Appeal from Whitley Circuit Court.

M. L. JARVIS, Circuit Judge.

From the judgment plaintiff appeals. Reversed.

1. Indemnifying Bonds—Damages Recoverable—Counsel fees— Witness fees—In an action on an indemnifying bond for damages for the wrongful seizure and detention of the plaintiff's goods, in the absence of malice the defendants are not liable for counsel fees to the successful litigant. Nor is the plaintiff entitled to recover as damages the fees paid for witnesses who were not used, or whose claims were not allowed in that action.

2. Usable Goods—Interruption of business—Profits—Future business—Credit—In an action on an indemnifying bond for damages for the wrongful seizure and detention of the owner's goods, he is not only entitled to have his goods restored to him in the same condition as when taken, but where the property is usable and its use has a value, he should be compensated for the time he was deprived of its use. When the natural and direct result of a tort is the interruption or injury to an established business, profits lost during the period of enforced suspension ought to be recovered from the wrongdoer. But damage to one's future business or his credit is not recoverable.

3. Claimant Bond—Fees Paid Surety Company—In an action for damages on an indemnifying bond where the owner of the goods seized had to execute a claimants forthcoming bond in obtaining a release of the levy, on which he paid the surety company a fee, this was an incident necessarily imposed by the wrongful seizure, for which the owner ought to recover.

TYE & DENHAM for appellant.

Manning v. Grinstead, &c.

1. Where there is any reasonable doubt as to the ownership of goods, or their liability to be taken on execution, indemnity may include damages, costs and other legal expenses, including counsel fees. (Russel v. Walker, 15 Am. St. Rep., 242; Cook v. Merrifield, 139 Mass., 139; Lindsey v. Parker, 142 Mass., 582.)

2. The view is taken in some jurisdictions that damages for injury to or loss of business are recoverable as actual damages, but the weight of authority is probably against this view, owing to the fact that such injury is not the proximate or natural result of the wrong complained of. (Marx v. Leinkauff, 93 Ala., 453; Meyer v. Fagan, 34 Neb., 184; Powers-Taylor Drug Co. v. Wafford, 53 S. W., 243.)

3. Damages for the loss of the use of the property during the time of its detention is an injury for which recovery may be had. In other words, the appellant should recover the value of the right to sell this property during the time it was detained. (Ashcraft v. Elliott, 18 Ky. Law Rep., 934; Vol. 2, Sutherland on Damages, p. 1336; Gaar v. Lyon, 99 Ky., 672; Bruce v. Coleman, 1 Handy [Ohio], 575; Doll v. Cooper, 9 Lea [Tenn.], 576; Coulson v. Panhandle National Bank, 54 Fed., 855.)

SHARP & SILER for appellees.

1. The court will observe that this action is based upon a breach of covenant; the breach of the bond is the foundation and cause of action. The allegation on the part of the plaintiff that two of the defendants, naming them, have broken the conditions of the bond, is an admission on his part that the other two defendants have not broken the conditions of the bond, and, if they, Sharp & Siler, have performed the conditions of the covenant, the plaintiff can not maintain an action against any other person therefor.

2. The allegations in the plaintiff's petition in regard to the attorney's fees, time lost in preparing his suit, and paying witness fees, were all incurred in the defense of the motion for a judgment upon the bond executed by the defendants, and are therefore damages, if sustained, not recoverable in this action.

AUTHORITIES CITED.

Mann v. Martin, 82 Ky., 242; Riggs v. Maltby, 2 Metcalf, 88; Campbell v. Galbraith, 12 Bush, 459; Crawford v. Woodworth, 9 Bush, 725; Worthington v. Morris, 98 Ky., 541; Smith v. Bell, 91 Ky., 655; Trustee v. Perkins, 8 B. Monroe, 198; Wolfe v. Hunter, 15 Ky. Law Rep., 847; Mocrf. v. Stirman, 15 Ky. Law Rep., 587; Pettit v. Mercer, 8 B. Monroe, 851; Tisdale v.

Major, 68 American State Rept., 272; State v. Thomas, 61 American Decisions, 580; Seattle v. Haley, 36 American State Repts., 156; Casper v. Kipping, 52 American State Repts., 604; Burton v. Knapp, 81 American Decisions, 474; Kyd v. Cook, 71 American State Repts., 669; Asher v. Stacy, 23 Ky. Law Rep., 1586; Perry v. Lyon, 23 Ky. Law Rep., 844.

OPINION BY JUDGE O'REAR—Reversing.

Appellant's stock of clothing and merchandise of a similar character was levied on under an execution in favor of appellees Grinstead & Tinsley. It was levied on as the property of H. L. Manning. Before the execution was levied the officer required a bond of indemnity which was given. Appellant executed a forthcoming bond as claimant of the stock of merchandise, whereupon it was turned back to him by the sheriff. None of it had been sold or damaged while in the sheriff's custody, nor had it depreciated in value. Grinstead & Tinsley proceeded upon the forthcoming bond, by notice, to try the question of title, resulting in a judgment settling that question in appellant's favor. This suit was then brought on the bond of indemnity. On the trial, the facts above recited were shown. In addition, appellant offered to prove that he paid $50 counsel fee for defending his title in the motion or suit of Grinstead & Tinsley against him on the claimant's bond, as well as incurred $16 of expenses for his witnesses. The circuit court refused to admit the evidence. Appellant also offered to prove that he could have made $5 per day profit by conducting his business, but was deprived of it for 13 days while the sheriff had the custody of his goods. He also claims damages to his business generally by the demoralizing effect of the wrongful seizure of his stock. All this evidence was also excluded. Upon the showing made the trial

court directed a verdict for nominal damages only. Appellant contends that the court erred in excluding the evidence alluded to, and consequently in giving the instructions for nominal damages only.

This is not a suit for malicious prosecution or attachment. Exemplary and extraordinary damages were not permitted to be assessed. The real effect of the proceedings was that Grinstead & Tinsley, creditors of H. L. Manning, conceiving that his brother, appellant, was covering up his property so as to defeat H. L.'s creditors, took the course they did to test the bona fides of appellant's claim of his ownership. But Grinstead & Tinsley failed to establish their claim of fraud. The penalty of such failure, so far as the suit alone is concerned, is the liability for all the legal costs of the action. This was adjudged against them, and they have presumably paid it. But in the absence of malice they are not liable for counsel fees to the successful litigant. That point is discussed and settled in Worthington v. Morris, 98 Ky., 54, 17 Ky. Law Rep., 624, 32 S. W., 269. Nor was appellant entitled to recover as damages the fees paid for witnesses who were not used, or whose claims were not allowed, in that action. Such fees, if legally taxable against appellant, were adjudged to him on the other trial. If not legally taxable, they ought not to adjudged to him at all.

But there is a further question involved; that is, what was the damage sustained by appellant, whose goods were admittedly seized wrongfully by the sheriff under the execution of appellees, and by their procurement and direction? By reason of the bond of indemnity required by the sheriff he is exonerated from liability for such damage, if the bond was solvent when executed. (Section 643, Civil Code Prac-

tice.) That it was solvent is not here disputed. The
proof does not show that the goods levied upon were
damaged.     They were all     returned   to  appellant
within 13 days after they were taken from him by
the officer. Probably they sold, or would have sold,
for as much after appellant regained them as they
would have brought at any time during the existence
of the levy. From this, the circuit court assumed
there was no actual damage sustained by appellant.
On the trial appellant offered to prove, but it was
rejected, that his was an established business; that
his average sales for some months previous to the
levy were so much, and that his average profits had
been $5 a day; that his business was completely stop-
ped by the levy, as the whole of his stock of merchan-
dise was levied on, and his business house closed up
by the sheriff; and that the period during which it
was suspended by the wrongful seizure of his goods
ran from December 20th to January 2d following—
a busy season, in which he would have made at least
an average of sales, and therefore of profits. Appel·
lant offered to show, also that his business had been
demoralized, and his standing   as a merchant  im--
paired, thereby causing him further loss, by reason
of the wrongful levy. All this evidence was rejected
by the trial court upon the theory that the damage
sought to be established thereby was too remote to·
be the proximate result of the injury sued for.

The execution commanded the officer to seize the
goods and chattels of H. L. Manning subject to exe-
cution—not those of J. L. Manning.   When the
sheriff went beyond the authority of his writ, and
seized under it the property of a stranger to it, he
was not protected by it. He was a trespasser from
the beginning, and but for the effect of the bond of

indemnity, which shifted to the obligors of the bond the sole liability for his acts, would have been responsible to the stranger for all the damages sustained by him by reason of the trespass. The obligors of the bond, by its execution and by the terms of the Code, assumed, as directors and indemnitors of his acts, full responsibility therefor to all affected by them. (Freeman on Executions, section 254.) As was said in Davis v. Newkirk, 5 Denio, 94: "The bond contemplated such a seizure and sale, and was a virtual request to the sheriff to proceed accordingly. What the sheriff did was, therefore, in effect done under the direction and with the advice and concurrence of the defendants, and for which they are as much responsible as the sheriff would be. All who direct, request, or advise an act to be done, which is wrongful, are themselves wrongdoers, and are responsible for all damages."

That the owner is entitled to have his property restored in the same condition it was when taken is a principle unchallenged. But manifestly that is not all, for that may not always make him whole. Where the property is usable, and its use has a value, undeniably the owner should be compensated for the time he was deprived of the use. For example, a horse, an express wagon, a milk cow, a piece of machinery used in a manufacturing plant, and the like. In such cases the value of the use of the thing is as susceptible of proof as the value of the thing itself, and is just as much the property of the owner as is the article. But there are cases where the property wrongfully taken can not be used in the sense that its mere use brings an income. In such cases it is usual to allow interest upon the value of the thing as compensation to its owner for being deprived of its pos-

session. It must be apparent, though, that there may be instances when that is not adequate compensation. The complete idea at the bottom of the matter of allowing damages is to compensate the owner in money for that of which he was wrongfully deprived. Different criteria will be applied, therefore, to different cases. In the case at bar, the merchandise had not a usable value, as would a horse, or a wagon, or a piece of machinery. Nor would interest upon the value of the goods be adequate. One thousand dollars worth of merchandise would produce only two dollars per month of interest, calculated on the basis of 6 per cent. per annum. There must, then, be some other basis of estimating the damage, or there would be a wrong or injury without a remedy.

Appellant's goods had a value as part of his business. His trade belonged to him as certainly as the goods. Neither could be disturbed without doing some damage to the other. When appellees caused appellant's goods to be seized and withheld for a season, certainly it does not answer to say, later on, "You have your goods unimpaired in value." For, while that may be true, he has not had the use of them during the time they were wrongfully withheld. A merchant's use of his wares is to sell them at a profit, and to reinvest the proceeds and sell again at a profit. He attracts trade by being constantly prepared to meet its wants. The value of his goods is to be found mainly in so using them in his business. When the natural and direct result of a tort is the interruption or injury to an established business, profits lost during the period of enforced suspension ought to be recovered from the wrongdoer. This is the only adequate remedy to him. Less than that

satisfies no rule of law or of right.   These general
principles are maintainable, we believe, by the texts
and authorities of Sedgewick on Damages, sections
537, 565, and 4 Sutherland on Damages, section 1144.

While profits are generally deemed too remote to
be considered in estimating damage, yet   they are
sometimes allowed to be shown for that purpose. The
reason is, always, that no other measure, equally just,
can be resorted to in the particular case, or the class
to which it belongs.   When allowed in a case such
as the one at bar, the general course is to show the
average profits in the interrupted business during a
corresponding previous average period.  (Peshine v.
Shepperson, 17   Grat., 472, 94 Am. Dec.,   468; San
Antonia v. Royal, 16 S. W., 1101; Houston, &c. R.
R. Co. v. Hill, 63 Tex., 381, 51 Am. Rep., 642; Bagley
v. Smith, 10 N. Y., 489, 61 Am. Dec., 756; The May-
flower, 1 Brown's Adm'r., 387, Fed. Cas. No. 9,345;
Allison v. Chandler, 11 Mich., 548.)

Damage to appellant's future business, or to his
credit, are not recoverable in this action.   The dis-
tinction and the reason are well stated by  Judge
Simpson in Petit & Owen v. Mercer, 8 B. Mon., 50.
That was an action on an attachment bond, where
the writ had been wrongfully sued out and levied on
the goods of appellee Mercer.   The court drew the
line between malicious and ill-advised levies.   In the
former, it was held, he could have recovered for in-
jury to his credit and for the derangement of his busi-
ness; but of the latter it was said: "The condition of
the bond is satisfied, and its terms substantially com-
plied with, by securing to him damages adequate to
the injury to the property attached and the loss aris-
ing from the deprivation of its use, together with the
actual costs and expenses incurred."   (See Sedg-
wick on Damages, section 127.)

In the case at bar, appellant was put to expense in obtaining a release of the levy. He had to execute a claimant's forthcoming bond, on which he paid the surety company a fee. This was an incident, necessarily imposed by appellee's wrong, for which appellant ought to recover. (Sedgwick, Damages, section 467.)

The judgment is reversed, and cause remanded for a new trial, under proceedngs not inconsistent herewith.