RENDERED: MARCH 19, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0515-MR

ANDREW MCMICHAEL                                             APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 19-CR-000882-002

COMMONWEALTH OF KENTUCKY                                     APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

DIXON, JUDGE: Andrew McMichael appeals the order of restitution entered by

the Jefferson Circuit Court on March 10, 2020. After careful review of the record,

briefs, and law, we reverse and remand.

On October 22, 2019, McMichael pled guilty to theft by unlawful

taking over $500 but less than $10,000[1] for removing and scrapping some stainless

---

[1] Kentucky Revised Statutes (KRS) 514.030(2)(d), a Class D felony.

steel siding from a 1952 Mountain View modular diner owned by Moseley Putney.[2] The scrapping of the stainless steel netted approximately $150, which was split amongst McMichael, his codefendant, and perhaps another party not prosecuted in this action.[3] As part of the plea agreement, McMichael agreed to pay restitution in an amount to be determined by the trial court.

On March 9, 2020, a restitution hearing was held. Putney, the sole witness for the Commonwealth, testified that he bought the diner in 1991 for approximately $25,000. At the time of purchase, the diner was in need of restoration, including repairs to its roof and one end, and it did not include a kitchen. After purchase, Putney simply moved the diner—twice—with its final destination being a storage site where it was exposed to the elements for over 15 years. Putney visited the storage site every few years to weed-eat, cut back trees, take pictures, and generally inventory the diner. Prior to discovering the theft of its siding, it had been 18 to 24 months since Putney had visited the diner. Putney produced no photos from his last visit prior to the vandalism but, rather, one photo of the diner's good side which he believed to be taken five to ten years before removal of the siding. He also produced two photos of the diner taken after the

---

[2] He is also referred to as "Mose" and "Moses" Putney in the proceedings below.

[3] McMichael's codefendant offered testimony at the restitution hearing about the involvement of another man he knew only as "Junebug" who may have also shared in the profits.

siding removal, which showed much of the siding still intact (though not in pristine condition), and two photos of the siding found at the salvage yard.

The foregoing notwithstanding, Putney believed he could have sold the diner before the siding was removed for $30,000 to $60,000. He also believed the diner could generate three million dollars or more once fully restored and operational. Nonetheless, Putney never insured the diner or procured an insurer's estimation as to its value. Putney acknowledged the stainless steel siding removed by McMichael had a low salvage value but claimed it had a much higher fair market and/or replacement value due to its "custom" bending and the forming of the metal which made it "unique." Putney further acknowledged much, if not all, of the siding was recovered; however, he testified it was damaged and unusable. Putney testified he had consulted Merrick Kemper, a local sheet metal and roofing contractor, and obtained two repair estimates, which were entered as exhibits.[4] The first estimate for a partial repair was $62,493, while the second estimate for a more complete repair was $221,800.

On cross-examination, Putney denied telling police the diner was worth only $3,000, the amount cited in the criminal complaint. Putney explained that amount only estimated the salvage value of the steel taken, not the value of the

---

[4] McMichael objected to the admission of these estimates as exhibits since he did not have the opportunity to cross-examine their author. His objection was overruled by the trial court.

diner itself. He also testified that he had no idea what the salvage value of the stainless steel was but thought it would have been higher. Putney conceded he had no records regarding the purchase of the diner, nor did he have documentation to support his estimates that the sale value of the diner before the siding was removed was between $30,000 and $60,000 or that the diner could generate millions of dollars once fully restored and operational.

McMichael requested restitution be set at either the amount for which the stainless steel was scrapped (approximately $150) or the amount set forth in the initial complaint ($3,000). McMichael argued the Commonwealth had not met its burden of proof to establish higher restitution where Putney's testimony conflicted with the initial complaint, which was never amended and was not supported by documentation. McMichael further argued the diner was not worth the amount Putney asserted because it had been sitting in the woods since the 1990s and was in need of extensive restoration before the siding was removed. The Commonwealth disagreed, asserting Putney was competent to testify and his testimony was supported by repair estimates from a company specializing in metal work. The Commonwealth asked the court to set restitution at $62,493, the amount necessary to repair the damage caused by the theft. The trial court agreed and ordered McMichael to pay $62,493 in restitution. This appeal followed. Additional facts will be introduced as they become relevant.

On appeal, a trial court's finding as to the amount of restitution will not be set aside unless it is clearly erroneous, *i.e.*, unsupported by substantial evidence. *Jones v. Commonwealth*, 382 S.W.3d 22, 32 (Ky. 2011); *Mitchell v. Commonwealth*, 538 S.W.3d 326, 329 (Ky. App. 2017). "Substantial evidence is evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Mitchell*, 538 S.W.3d at 329.

McMichael has appealed the sum of restitution as determined by the trial court. He makes three arguments why the trial court erred by setting a restitution amount in excess of $62,000: (1) the Commonwealth failed to present any evidence having even a minimum indicium of reliability that the diner or its metal siding was worth more than the $3,000 noted in the criminal complaint; (2) the court's finding that the diner and its siding had a higher value was ambiguous; and (3) the diner and its siding had little to no value on the fair market.

We begin by noting restitution to the victim herein is required by statute since McMichael pled guilty to a Class D felony offense. KRS 532.356(1)(b).[5] Pursuant to KRS 532.350(1)(a), restitution is rather vaguely

---

[5] The text of the statute states in relevant part,

> (1) Upon a person's conviction and sentencing for any . . . Class D felony offense, . . . the court shall impose the following sanctions in addition to any imprisonment, fine, court cost, or community service:

defined as "any form of compensation paid by a convicted person to a victim for . . . property damage . . . because of a criminal act[.]" Unless the amount of restitution is agreed upon by the parties, constitutional due process requires a trial court to conduct an adversarial hearing for the purpose of determining a restitution amount. *Jones*, 382 S.W.3d 22. At this hearing, the Commonwealth bears the burden of establishing the validity of the restitution claim and the amount of restitution by a preponderance of the evidence. *Id.* at 32. Formerly, under KRS 431.200, juries were required to determine the restitution amount.[6] However, after the enactment of KRS 532.032, restitution determinations are made by the trial court and not by jury when this statute is applicable. *See Brown v. Commonwealth*, 540 S.W.3d 374 (Ky. 2018); *Fields v. Commonwealth*, 123 S.W.3d 914, 916 (Ky. App. 2003), *as modified* (Nov. 26, 2003).[7] Moreover, trial courts are vested with

---

. . .

(b) Restitution to the crime victim as set out in KRS 439.563, 532.032, and 532.033.

[6] Pursuant to KRS 431.200, "[a]ny person convicted of a misdemeanor or felony for taking, injuring or destroying property shall restore the property or make reparation in damages if not ordered as a condition of probation."

[7] According to *Fields*:

The mandate of this statute applies regardless of whether the convicted defendant is to be incarcerated or conditionally released. We agree with the Commonwealth that under this statute restitution must now be considered during sentencing in all appropriate cases, and therefore that the General Assembly contemplated ordinary sentencing procedures as the foundation for

-6-

"broad discretion . . . to resolve [restitution] matter[s] in a way that respects the constitutional rights of all the parties and that achieves substantial justice." *Jones*, 382 S.W.3d at 31.

Unfortunately, Kentucky's restitution statutes give little guidance on *how* the amount of restitution is to be determined. Moreover, few published opinions have set out any methodology to follow in determining equitable restitution orders. Nevertheless, in most theft cases, determining the value of the thing stolen is a rather easy endeavor. For example, in *Mitchell*, the victim's testimony as to the value of items stolen, based on the prices for the same items listed on Amazon.com, was deemed sufficient to support the trial court's determination as to the amount of restitution. *Mitchell*, 538 S.W.3d at 328, 330. However, herein, apparently 1950s era modular diner stainless steel siding is one of the few things Amazon.com fails to offer for sale. Furthermore, Putney offered no testimony of any research—online or otherwise—conducted to verify his estimates of the diner or the value of its siding.

---

restitutionary sentences, not the jury procedure referred to in KRS 431.200. In the cases where KRS 431.200 applies, that statute continues to provide an alternative procedure for a post-sentencing restitution order, but KRS 532.032 (and the statutes incorporated therein) is now the generally applicable criminal restitution statute.

123 S.W.3d at 916 (internal footnote omitted).

The uncontroverted evidence offered by the Commonwealth at the hearing established Putney purchased the diner in 1991 for approximately $25,000 in a significant state of disrepair. After the purchase, Putney had done nothing more than move the diner a couple of times, leaving it at an outdoor storage lot for over 15 years unprotected from the weather. Certainly, nothing had been done to increase its value. McMichael testified he shared the $150 from the sale of the stainless steel. The only shred of evidence presented by the Commonwealth as to the value of the metal came through an estimate to replace the sheet metal on the unusable diner for over $62,000—more than double what Putney paid in 1991 for the entire diner! Surely the adage "crime doesn't pay" is a vast understatement when applied to McMichael.

Even so, appellate courts in Kentucky have established few procedural guides for restitution determinations. Significantly, the courts have recognized a criminal defendant's right to due process in the establishment of a restitution amount. *Fields*, 123 S.W.3d 914; *Wiley v. Commonwealth*, 348 S.W.3d 570, 575 (Ky. 2010); *Jones*, 382 S.W.3d 22. Additionally, restitution awards must be based on *reliable* facts. *Id.* As noted in *Wiley*, and applied to restitution proceedings, "although a lower standard of due process applies at sentencing, the facts relied on by the court must 'have some minimal indicium of reliability beyond mere allegation.'" *Wiley*, 348 S.W.3d at 575 (quoting *Fields*, 123 S.W.3d at 917).

Kentucky courts have addressed the establishment of value of stolen

property in the context of determining the proper crime charged.  In *Allen v.

Commonwealth*, 148 Ky. 327, 146 S.W. 762 (1912), the Court observed:

> In cases like this, where the degree of the offense
> depends upon the value of the property, it often happens
> that the witnesses will differ as to its value; and, when
> there is a difference of opinion as to this matter, it is for
> the jury to form their own conclusion from the evidence
> as to the value of the property stolen.  *Evidence of the
> cost price of an article is not conclusive as to its value;
> nor, indeed, is evidence as to its selling price*.  The test
> by which the degree of guilt of the accused is to be
> determined is the *value of the article at the time it was
> stolen*, and this value is to be arrived at by the jury from a
> *consideration of all the facts and circumstances shown in
> the evidence*.  Where the article stolen is in general use,
> and has what might be called a standard market value, of
> course the best evidence of the value of such an article is
> the price at which it sells in the open market.  But where
> the article does not appear to have a standard value in the
> open market, or its standard value is not shown, the
> *evidence of its value must be arrived at from facts and
> circumstances testified to by witnesses who **qualify**
> themselves to speak as to its value*.

*Id.* at 762-63 (emphasis added).  Here, the question of the stainless steel's value is

not needed to determine the degree of the offense, as that had already been agreed

upon; rather, the determination of its value goes to the issue of restitution.  Since

the stainless steel at issue herein does not appear to have a standard value in the

open market, and its standard value was not shown, the evidence of its value must

be determined from facts and circumstances testified to by a witness who qualifies

himself to speak to its value. The sole witness for the Commonwealth was the diner's owner, Putney; no evidence of his qualifications to testify as to the diner's worth, beyond merely being its owner, was presented.

As previously noted, in *Fields*, we held that "[t]he due-process clauses of the federal constitution require that sentences not be imposed on the basis of material misinformation, and that facts relied on by the sentencing court have some minimal indicium of *reliability beyond mere allegation*." *Fields*, 123 S.W.3d at 917 (emphasis added) (internal quotation marks and footnotes omitted). Following *Fields*, in *Wiley*, our Supreme Court further held that "the record must establish a factual predicate for the restitution order." *Wiley*, 348 S.W.3d at 575.

"In the ordinary case, the proper yardstick is the market value of the property at the time and place of the larceny; the original cost of the property or any special value to the owner personally is not considered." 3 CHARLES E. TORCIA, GRADES OF LARCENY—DETERMINATION OF VALUE, WHARTON'S CRIMINAL LAW § 345 (15th ed. 2020) (footnotes omitted).[8] Herein, Putney offered

---

[8] 52B Corpus Juris Secundum (C.J.S.) *Larceny* § 81 (2021) provides:

> **In the absence of statutes providing otherwise, the measure of the value of a subject of larceny is its fair market value at the time and place where the alleged crime has been committed. If an article does not have a market value, its actual value must be determined from a consideration of all the facts and circumstances in evidence.**

nothing more than his mere opinion of the worth of both the metal and the diner. There was no evidence of the current value of the diner or of the stainless steel at the time it was taken. This is simply insufficiently detailed or reliable to establish a fair restitution computation; due process requires more.

Regrettably, Kentucky courts have not found a specific formula as an appropriate method to determine an equitable sum when setting restitution, which is by its very nature not an exact science. *See United States v. Diamond*, 969 F.2d 961, 965 (10th Cir. 1992). They have, however, recognized that using certain

Unless otherwise provided by statute, the "value" of the stolen property means its market value, or fair market value, or reasonable selling price, at the time and place of the theft. The place that determines the market value of stolen property for the purpose of fixing the degree of larceny is necessarily somewhat flexible and uncertain in extent.

Market value has been defined as the price at which a willing seller and a willing buyer will trade or price actually charged and received by the merchant in usual, customary sale of the goods stolen. Any evidence bearing on the question of fair market value may properly be considered.

Where an item that was stolen has no market value, its actual value must be shown in order to determine the grade of the offense. In such a case, the article's actual value must be determined from a consideration of all the facts and circumstances in evidence, including the testimony of witnesses who qualify themselves to testify as to its value. *Value may not be determined solely by its worth to the owner or its original cost.* However, cost, together with other proof, may afford the basis for a valid finding as to value. In addition, replacement value may be determinative where the property has no cash market value, or such value cannot be ascertained.

valuation methods of property stolen or damaged may not always be reliable when based on conjecture and speculation. In *Kentucky Utilities Company v. Consolidated Telephone Company*, 252 S.W.2d 437 (Ky. 1952), Kentucky's highest Court refused to use market value to measure damages to a telephone line because "[i]n ordinary circumstances a portion of a telephone system would not be marketable as such" and thus "any estimate of the market value of a portion of a telephone system would be conjectural[.]" *Id*. at 441. It is well established that an award of restitution may not be based on mere speculation. *Fields*, 123 S.W.3d 914; *Wiley*, 348 S.W.3d at 575; *Jones*, 382 S.W.3d 22. Thus, both the facts and the method for determining restitution should be *reliable*.

To determine the proper method to employ when setting restitution, we must look to the legislature's intent and purpose behind its statutes governing same. The Supreme Court in *Commonwealth v. Bailey*, 721 S.W.2d 706, 707 (Ky. 1986), observed the purpose of restitution as follows:

> We also do not feel this is additional punishment exacted by the criminal justice system. It is neither imprisonment as envisioned by KRS Chapter 532, nor fine as set out in KRS Chapter 534. *It is merely a system designed to restore property or the value thereof to the victim.* It is not punishment to make the criminal give back something which was never his and which was obtained by him only by commission of a crime.

(emphasis added). Surely, restitution contemplated by our statutes cannot require payment of a sum equal to more than double what a victim paid for an entire diner

just because replacement of its siding would cost an exorbitant amount. To do so would not restore only what was lost but would amount to a windfall for Putney.

The legislative purposes behind restitution include "deterrence and rehabilitation as well as making the victim whole." *Hearn v. Commonwealth*, 80 S.W.3d 432, 436 (Ky. 2002). Under Kentucky law, the aim of restitution is the same as that of compensatory damages, which "is to make the injured party whole to the extent that is possible to measure his injury in terms of money. The object is not to place the plaintiff in a better position than he would have been had the wrong not been done." *Kentucky Cent. Ins. Co. v. Schneider*, 15 S.W.3d 373, 374-75 (Ky. 2000) (citations omitted). Moreover, it is well established that an "injured party may not make a profit" out of an injury to his property. *Reed v. Mercer Cty. Fiscal Court*, 220 Ky. 646, 295 S.W. 995, 996 (1927). Overall, "[t]he complete idea at the bottom of the matter of allowing damages is to compensate the owner in money for that of which he was wrongfully deprived." *Manning v. Grinstead*, 121 Ky. 802, 90 S.W. 553, 555 (1906).

Here, the trial court's measure of damages offends the most general principles of damages law. Putney purchased the diner in 1991 for approximately $25,000. Although some items increase in value over time, given the facts of this case—that the diner was inoperable at the time of purchase, was left uninsured in a storage field exposed to the elements to further deteriorate, and Putney was unable

to sell it or find a partner for his business venture—the Commonwealth has failed to meet its burden of proving that is the case here. An award of $62,493 to Putney in restitution would clearly create a windfall in his favor at McMichael's detriment. Any such measure of damages would go far beyond compensating Putney for that of which he was wrongfully deprived and would clearly operate as a windfall profit. Accordingly, it was clear error for the trial court to award an amount of restitution that created such a windfall for Putney.[9]

With the legislature's purpose behind restitution firmly in mind, we again turn to the issue of determining a proper method for setting restitution. McMichael argues the trial court erred when it failed to determine whether it was reasonable to repair the diner after weighing the decrease in its value versus the cost of repair. There is an inexplicable dearth of published criminal case law on the issue of reasonableness of repair costs and what amounts to excessive restitution. Nevertheless, in *Mitchell*, another panel of our Court discussed a somewhat similar situation. In that case:

> [the victim] testified that stolen televisions were
> recovered but one was damaged. The estimated repair

---

[9] *See Level 3 Commc'ns, LLC v. TNT Constr., Inc.*, 220 F. Supp. 3d 812 (W.D. Ky. 2016). *See also United States v. Howard*, 784 F.3d 745, 750 (10th Cir. 2015) (internal quotation marks and citation omitted) (A restitution award "must not unjustly enrich crime victims or provide them a windfall."); *United States v. Zander*, 794 F.3d 1220, 1233 (10th Cir. 2015); *United States v. Boccagna*, 450 F.3d 107, 121 (2d Cir. 2006); *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993); *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002). Although these cases discuss the federal Mandatory Victims Restitution Act (MVRA), 18 United States Code Annotated § 3663A, the same principle applies here.

-14-

value for the damaged television was $650 and the replacement value was $400. . . . The $250 difference between the repair cost and the replacement value of the damaged television was deducted from the restitution sought . . . .

538 S.W.3d at 328. Likewise, herein, the difference between the estimated repair and the replacement value should be disallowed and deducted from the restitution amount.

Considering the absence of further relevant criminal case law on this issue, we must also compare the case herein to principles espoused in areas of civil law. In tort law, it is generally accepted that "repair is unreasonable when its cost exceeds the difference in the before and after values." *Newsome v. Billips*, 671 S.W.2d 252, 255 (Ky. App. 1984). Why, then, should we demand a different outcome in criminal cases?

In *Newsome*, another panel of our Court discussed this principle found in the law of torts, stating:

> We are dealing with recovery for a tort and not an insurance contract which might allow for some costly restoration. The tort-feasor is responsible for the *lesser of the cost to cure and the diminished value*. The Restatement of Torts is generally consistent. It provides:
>
>> If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

> (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
>
> (b) the loss of use of the land, and
>
> (c) discomfort and annoyance to him as an occupant.

*Restatement (Second) of Torts*, § 929, at 544 (1977). *The option for restoration is nevertheless limited by what is "reasonable."*

An example of a situation with possible high cost and low loss might be a house with aluminum siding which gets some dents from flying rocks due to blasting. A substantial cost might be required to remove the dents, but the diminished value might be very little. The loss would be especially small, if the siding already had several dents from other causes.

We conclude that the instruction was a correct statement of the law, and that it was properly applied to the facts as they were proven at trial. The instruction was based on [*Edwards & Webb Constr. Co. v. Duff*, 554 S.W.2d 909 (Ky. App. 1977)]. That case involved a total loss, but *it also prevented the repair cost from exceeding the loss in value.*

The law is clear enough. The problem in this case is with the proof and the development of the facts. The estimated cost to repair ranged from $600.00 to $12,500.00. The loss in value was essentially fixed at $800.00. The jury could have awarded damages between $600.00 and $800.00. The verdict of $800.00 was proper whether it was based on the jury's determination of a cost to repair or the actual loss in value as was proven.

*Id.* (emphasis added). The case herein is faced with a similar problem of proof and fact development. Here, there is a wide range of estimated cost of repair, as well as uncertainty regarding the loss of value which should act as a cap on the amount of restitution. That cap should be determined *before* awarding repair costs, which are unreasonable *per se* if they exceed that amount.

In another tort case discussing caps on recovery, *Ellison v. R & B Contracting, Inc*., 32 S.W.3d 66 (Ky. 2000), the Court held:

> Questions regarding the cost of repairing a particular injury to real estate and the extent of any diminution in fair market value of the real estate as a result of an injury are questions of fact. Accordingly, we hold that in future cases *where a claimant seeks compensation in the form of repair costs for an injury to land, trial courts shall require the jury to find whether the injury may be repaired at a cost less than the diminution in the value of the property, and, if the jury finds otherwise, limit the claimant's recovery to the diminution in the value of the property.* The following sample damages instruction taken almost verbatim from J. Palmore and R. Eads, *Kentucky Instructions to Juries*, § 39.12 (Anderson Publishing Co.1989) accomplishes this purpose:
>
>> INSTRUCTION NO. _____
>>
>> If you find for P you will determine from the evidence and award [P] the *lesser* of the following two amounts:
>>
>> (A) the reasonable cost of restoring [P's] property to substantially the same condition as immediately before it was damaged by [ ].
>>
>> OR

> (B) the difference between the fair market value of
> [P's] entire property immediately before and
> immediately after the property was damaged, not
> to exceed _____.
>
> "Fair market value" is the price that a person who
> is willing but not compelled to buy would pay and
> a seller who is willing but not forced to sell would
> accept for the property in question.

*Id*. at 70-71 (some emphasis added) (footnote omitted). Again, here, there is no evidence of the amount of diminution in the value of Putney's property. The difference in the value of the diner immediately preceding and following the removal of its siding should be determined and serve as a cap on the amount of restitution.

We also find 25 C.J.S. *Damages* § 152 (2021) instructive. It states, the "measure of damages for injury to, or destruction of, buildings or other structures is the amount of the loss, which may be the difference in the value of the realty before and after the injury, the value of the building or structure, or, where *practicable*, the cost of restoration." (Emphasis added.) It further provides:

> The measure of damages *may* be the cost of restoration or
> repair where the building or other structure can be
> restored to substantially the condition it was in prior to
> the injury, *at least where such cost is less than the
> diminution in the value of the structure or is less than its
> value before the damage was inflicted*. Defendant is not
> required to pay for a new and modern structure,
> disregarding the obsolescent condition of the structure
> when damaged. To the cost of restoration may be added,

in a proper case, the loss of rental, or of use, or diminution in the value of the use of the property, during the time required for repairs, with a deduction, if such be the case, for the cost of restoring the property with new material more valuable than that destroyed.

### Lack of market value.

Where a building is without market value, its real or ordinary cash value is to be obtained from a consideration of other factors, such as its cost, the uses to which it has been put, and its age, condition, and location. The price at which the owner has contracted to sell it is not controlling.

(Some emphasis added) (footnotes omitted).[10]

---

[10] Under the "lesser than" measure of damages for a negligently damaged building, the owner is entitled to recover the entire cost of restoring the damaged building to its former condition unless such cost exceeds its diminution in value as the result of the injury, in which event the recovery must be limited to the amount of such diminution.

These legal principles are widely accepted in jurisdictions throughout the United States. *See Brooklyn Waterfront Terminal Corp. v. Int'l Terminal Operating Co*., 211 F. Supp. 702 (S.D. N.Y. 1962), *order aff'd*, 311 F.2d 221 (2d Cir. 1962); *T.H. Browning S.S. Co. v. F.H. Peavey & Co*., 235 F.2d 5 (8th Cir. 1956); *Russell v. United States*, 113 F. Supp. 353 (M.D. Pa. 1953); *City of Globe v. Rabogliatti*, 24 Ariz. 392, 210 P. 685 (1922); *S. Ry. Co. v. Wooten*, 110 Ga. App. 6, 137 S.E.2d 696 (1964); *Britven v. Occidental Ins. Co., San Francisco, Cal*., 234 Iowa 682, 13 N.W.2d 791 (1944); *Bus. Realty, Inc. v. Noah's Dove Lodge No. 20*, 375 S.W.2d 389 (Ky. 1963); *Price Bros. v. City of Dawson Springs*, 190 Ky. 349, 227 S.W. 470 (1921); *States Corp. v. Shull*, 216 Ky. 57, 287 S.W. 210 (1926); *Prestonsburg Superior Oil Gas Co. v. Vance*, 215 Ky. 77, 284 S.W. 405 (1926); *Reisz v. Kansas City S. R. Co*., 148 La. 929, 88 So. 120 (1921); *Ziegler v. Predmore*, 341 Mich. 639, 68 N.W.2d 130 (1955); *Fite v. N. River Ins. Co*., 199 Mich. 467, 165 N.W. 705 (1917); *Long v. Magnolia Hotel Co*., 236 Miss. 655, 111 So. 2d 645 (1959), *suggestion of error sustained on other grounds*, 236 Miss. 655, 114 So. 2d 667 (1959); *Snider v. Town of Silver City*, 56 N.M. 603, 247 P.2d 178 (1952); *Ferreri v. Dworman Assocs., Inc*., 34 Misc. 2d 1053, 231 N.Y.S.2d 399 (Sup. Ct. 1962); *Zaras v. City of Findlay*, 112 Ohio App. 367, 16 Ohio Op. 2d 306, 176 N.E.2d 451 (1960); *Dussell v. Kaufman Const. Co*., 398 Pa. 369, 157 A.2d 740, 79 A.L.R.2d 957 (1960); *Thompson v. King Feed & Nutrition Serv., Inc*., 153 Wash. 2d 447, 105 P.3d 378 (2005).

The common theme is:  pre- and post-incident values must be established and their difference serve as a cap on recovery.  Here, little or no effort was made to establish pre- or post-theft values of the diner or its siding, much less calculate their difference to serve as a cap on restitution.  We believe these values must be determined, and the cap applied, to set restitution which comports with its intent in order to obtain substantial justice.

Yet another consideration the trial court must apply when calculating restitution is the value of the recovered siding.  Although Putney testified the siding was "worthless," presumably when it came to re-attaching it for use on the diner's exterior, it undoubtedly had *some* value, even if only as scrap metal.  McMichael is entitled to an offset against his restitution by the value of the recovered siding.  Cases reviewing restitution under federal law are instructive on this principle.  "[T]he determination of the amount of loss must account for any benefit received by the victim."  *United States v. Guthrie*, 64 F.3d 1510, 1516 (10th Cir. 1995).  "Amounts a victim receives that reduce the loss are not to be included in the restitution amount[.]"  *United States v. Scott*, 74 F.3d 107, 110 (6th Cir. 1996).  Consequently, the value of the returned siding must be established and deducted from the amount of otherwise allowable restitution.

As a final note, we *sua sponte* point out another serious flaw with the trial court's restitution order.  Contrary to KRS 532.033, the trial court's order did

not provide to whom restitution payments should be made, how much the payments should be, or when they should be made.  These are required for a valid, binding, and enforceable restitution order.  *See Rollins v. Commonwealth*, 294 S.W.3d 463, 465 (Ky. App. 2009).  This restitution order must also comply with this statute.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of restitution of the Jefferson Circuit Court is REVERSED and REMANDED to the trial court for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General
Frankfort, Kentucky